Bohn, J.
Plaintiff DSM Thermoplastics Elastomers (“DSM”) filed this action against defendants Peter McKenna, President and shareholder of Wil-Man America, Inc. (“Wil-Man”), and Jeffrey Stevens, Vice President of Sales and also a shareholder of Wil-Man. DSM alleges that the actions of the defendants to induce it to purchase equipment from Wil-Man constituted fraudulent misrepresentation (Count I); negligent misrepresentation (Count II); violation of G.L.c. 231, §85J (Count III); and violation of 93A (Count IV). *474 Defendants now move pursuant to Mass.R.Civ.P. 12(b)(2) to dismiss all counts, asserting that this Court lacks personal jurisdiction over plaintiffs claims, or that the complaint fails to state a claim, pursuant to Mass.R.Civ.P. 12(b)(6). In the alternative, defendants request a stay in the proceedings pending resolution of the bankruptcy proceedings of Wil-Man. For the reasons discussed below, the defendants’ motion to dismiss will be DENIED and defendants’ request for a stay will be DENIED.
BACKGROUND
DSM is a Massachusetts corporation doing business in Leominster, Massachusetts. Wil-Man is a Georgia corporation with a place of business in Marietta, Georgia. At all times material to this action, Peter McKenna was president and a director and shareholder of Wil-Man; McKenna is a resident of Georgia. Jeffrey Stevens was vice president of sales and a director and shareholder of Wil-Man at all times material to these allegations; Stevens also resides in Georgia.
Beginning in September 1996, McKenna pitched the sale of a machine called a screen changer[1] to Glen Lewis at DSM. McKenna claimed that the machine could perform a variety of tasks: it could provide DSM a quick and efficient method for the line operator to change the filtering screens as necessary, without having to stop or divert the continuous flow of material through the process line; the screens could be changed during production without generating any scrap or defective material; and the screen changer would eliminate impurities in DSM products. Stevens joined in the sales negotiations in early 1997.
DSM alleges that McKenna made a written representation about the performance of the machine, expressed in a letter sent to Lewis in Massachusetts on September 9, 1996. The letter represented, inter alia, that the “screen change cycle requires less than one minute,” a fact that DSM contends is untrue. Stevens also espoused the benefits of the screen changer in letters written to Lewis on February 4, February 5 and February 8, 1997 and mailed to him in Massachusetts. In the letters, Stevens claimed that the machine’s “cycle require[d] less than one minute” (Feb. 4, 1997 letter); that because of the lower flux rate and the lower pressure drop associated with the screen changer, “use of the Screen Changer will bring an overall reduction in your black spec gel count compared to other systems” (Feb. 5, 1997 letter); and that “(s)crap generated during a screen change will be eliminated” (Feb. 8, 1997 letter).
In reliance on the above mentioned representations, DSM entered into a written purchase agreement with Wil-Man to define the terms and conditions of DSM’s purchase of a screen changer system. In the agreement, the parties agreed that the purchase and sale of the system was contingent on “a successful (defined below) trial run.” If the trial run was unsuccessful, as defined by the purchase agreement, DSM reserved the right to cancel the purchase order and return the system to Wil-Man for a full refund of any payments made, less a $1,000 cancellation fee.
The trial run of the screen changer system was deemed unsuccessful by DSM, as that term was defined in the agreement, and on December 30, 1997, DSM so informed Wil-Man in writing. Wil-Man agreed that the trial run was unsuccessful and confirmed this in writing by letter dated January 8, 1998. DSM returned the system to Wil-Man and demanded the full refund amount owed to it, as well as other damages. DSM contends that all statements are false and that the machine did not perform as represented by McKenna and Stevens. On September 7, 1999, DSM filed a complaint against Wil-Man, Inc. in Georgia state court. DSM filed the instant action on October 16, 2000 against McKenna and Stevens, which is nearly identical in its claims as those filed against Wil-Man in the Georgia action. Wil-Man filed for bankruptcy on October 27, 2000 in the United States Bankruptcy Court in the Northern District of Georgia. Wil-Man has, to date, failed to refund DSM the amount owed under the purchase agreement.
DISCUSSION
Defendants challenge DSM’s complaint on two bases: lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2); and failure to state a claim, pursuant to Mass.R.Civ.P. 12(b)(6). In the alternative, defendants request a stay in the proceedings in accordance with the automatic stay following the bankruptcy filing of Wil-Man, pursuant to 11 U.S.C. 362(a).
I. Personal Jurisdiction
The defendants first assert that this Court lacks personal jurisdiction over them and that they Eire entitled to dismissal of all claims against them, pursuant to Mass.R.Civ.P. 12(b)(2). The defendants, who reside and work in Georgia, contend that their contacts with DSM in the Commonwealth are insufficient to warrant jurisdiction over them by the Massachusetts longarm statute, G.L.c. 233A, §3.[2] DSM asserts that personal jurisdiction over both defendants is proper pursuant to G.L.c. 233A, §3(c), which allows the courts of the Commonwealth jurisdiction over a person when he causes “tortious injury by an act or omission in this commonwealth.”
Whether exercise of personal jurisdiction over a nonresident is permissible requires a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is exercise of jurisdiction under state law consistent with basic due process requirements mandated by the United States Constitution. See Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979); Haddad v. Taylor, 32 Mass.App.Ct. 332, 334 (1992). The plaintiff bears the burden of showing, through pleadings, affidavits, and other competent evidence, that personal jurisdiction exists. See Droukas v. Divers Training Academy, Inc., *475 375 Mass. 149, 151 (1978); Ealing Corp. v. Harrods, Inc., 790 F.2d 978, 979 (1st Cir. 1986).
DSM argues that this Court has specific jurisdiction over the defendants pursuant to subsection (c) of the longarm statute, “arising from the person’s causing tortious injury by an act or omission in this commonwealth.” G.L.c. 233A, §3(c). In support of its argument, DSM relies on a federal case construing Massachusetts law, Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), to illustrate its argument. In Murphy, the First Circuit considered whether delivery in Massachusetts by mail or telephone of false statements originating in New York provided a sufficient basis for jurisdiction under 3(c). See Murphy v. Erwin-Wasey. Inc., supra at 664. That court held that where a defendant knowingly sends a false statement into a state, intending that it should be relied on upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state, and so provided a sufficient basis for jurisdiction. Id
Where the defendant is a non-resident corporate officer, the plaintiff must also make some showing of direct personal involvement by the corporate officer in some action which caused the tortious injury. Cf. Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980). In the present case, plaintiffs complaint asserts that both defendants directed correspondence concerning DSM’s purchase of the screen changer to DSM in Massachusetts. The complaint also alleges that McKenna and Stevens made misrepresentations regarding the machine during the sales negotiations that DSM relied upon. The allegations of these actions and the results to DSM in Massachusetts are enough for this Court to satisfy the requirements for the longarm statute. See Kleinermann v. Morse, 26 Mass.App.Ct. 819, 823-24 (1989); Murphy v. Erwin-Wasey, Inc., supra.
Even if the exercise of personal jurisdiction over a nonresident is authorized by statute, the assertion of jurisdiction must also satisfy the requirements of due process. The issue here is whether McKenna and Stevens purposefully established “minimum contacts” in this state and whether specific jurisdiction over them comports with “fair play and substantial justice.” Ross v. Ross, 371 Mass. 439, 441 (1976), citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Court concludes that the defendants’ contacts with Massachusetts are sufficient to meet the “minimum contacts” standard.
Although the actions of McKenna and Stevens which brought them into contact with Massachusetts were part of their employment duties as executives and officers at Wil-Man, they constitute purposeful conduct that satisfies the longarm statute.[3] Furthermore, requiring McKenna and Stevens to defend this action in this Court does not offend basic notions of fair play and substantial justice. The exercise of personal jurisdiction over them pursuant to §3(c) of the longarm statute is therefore proper.
II. Failure to State a Claim
McKenna and Stevens contend that because their actions regarding DSM were taken on behalf of the corporation, Wil-Man, the claims against them personally should not be allowed to stand. In addition, the defendants argue, that because the complaint alleges the same claims as the civil suit brought by DSM against Wil-Man in Georgia, the underlying action here was filed only to circumvent the automatic stay that applies to Wil-Man as a result of the bankruptcy proceedings (see Discussion at Section III, infra).
Citing the holding of the Supreme Judicial Court in My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968), the defendants insist that the Court must only look beyond the corporate form in “rare particular situations [where additional facts are present the court will look beyond the corporate form] to prevent gross inequity.” Id. at 620.
A corporate officer is not always immunized for the acts he is alleged to have committed personally. See Nader v. Citron, supra at 102. Rather, a corporate officer is generally held personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving or ratifying the act that injured the aggrieved party. See Townsends, Inc. v. Beaupre, 47 Mass.App.Ct. 747, 751-52 (1999), citing Refrigeration Discount Corp. v. Catino, 330 Mass. 230, 235 (1953). See also LaClair v. Silberline Manufacturing Co., Inc., 379 Mass. 21, 29 (1979) (corporate officer liable for torts in which he personally participated, whether or not acting in the scope of his authority). It is not necessary in all instances to pierce the corporate veil in order to hold a corporate officer liable for a corporation’s torts. See Townsends, Inc. v. Beaupre, supra, at 751.
In addition to its claims of misrepresentation, DSM also seeks to impose individual liability on each of the defendants for unfair and deceptive trade practices in violation of G.L.c. 93A. A corporate officer maybe held personally liable for his “participation in unfair and deceptive practices.” Nader v. Citron, supra, at 103; Community Builders, Inc. v. Indian Motocycle Associates, Inc., 44 Mass.App.Ct. 537, 560 (1998). Similarly, if the corporate officer engages in behavior violative of Chapter 93A, he remains personally liable for his commission of that unfair or deceptive trade practice. Id. at 102-03.
Reviewing the allegations in the complaint by DSM, taking all allegations as true and drawing reasonable inferences therefrom in the plaintiffs favor, see Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998), citing Nader v. Citron, 372 Mass. 96, 98 (1977), this Court concludes that DSM has alleged *476 sufficient facts to support its claims against McKenna and Stevens.
III. Stay Due to Bankruptcy Proceedings
Finally, the defendants request that this Court stay the case at bar pursuant to 11 U.S.C. 362(a) pending resolution of the bankruptcy proceedings in Georgia involving Wil-Man.[4]
The purpose of the automatic stay provision is to promote orderly administration of the debtor’s estate, that is, to give a debtor the opportunity to formulate plans for repayment and reorganization which treat creditors equally. See In re Frigitemp Corp., 8 B.R. 284, 288-89 (Bankr. S.D.N.Y. 1981); Triangle Mgmt. Services v. Allstate Savings and Loan, 21 B.R. 699, 700 (Bankr. N.D.Cal. 1982). The automatic stay provisions of §362(a) apply only to actions against the debtor. See, e.g., JER SKW Services, Inc. v. Gold, 44 Mass.App.Ct. 243, 248 n.7 (1998) (automatic stay provisions apply only to partnership and not to actions against general partners of the debtor); Allegheny Intl. Credit Corp. v. Bio-Energy of Lincoln, Inc., 21 Mass.App.Ct. 155, 158 (1985) (arm of bankruptcy proceedings does not stretch out to protect guarantor); Pemstein v. Simpson, 36 Mass.App.Ct. 283, 293 (1994) (same); Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir.), cert. dismissed, 463 U.S. 1247 (1983) (stay provisions held not to apply to proceedings against co-defendant). Because the focus of a bankruptcy proceeding is on the assets of the debtor, and the claims here, although strikingly similar to those in the action against WilMan in Georgia state court, were brought against McKenna and Stevens in their individual capacities, the stay provisions do not apply to this action. See Ripley v.Mulroy, 80 B.R. 17, 19 (Bankr. E.D.N.Y. 1987) (stay did not apply to action brought against individual who was president and officer of two corporations, one of which was in bankruptcy).
ORDER
It is hereby ORDERED that defendants’ motion to dismiss is DENIED; it is further ORDERED that defendants’ request for a stay of the proceedings is DENIED.

 A screen changer is a mechanism installed in a process line that uses mesh screens to filter products as they flow through the process line, which, in this case, would be various plastic materials produced by DSM.

 G.L.c. 233A, §3: Transactions or conduct for personal jurisdiction. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e) having an interest in, using or possessing real property in this commonwealth; or (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting.

 No Massachusetts court has ever recognized the fiduciary shield doctrine as a limitation on the reach of the state’s longarm statute. Shipley Co., Inc. v. Clark, 728 F.Sup. 818 (D.Mass. 1990), citing Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F.Sup. 1106 (D.Mass. 1983). Although a court may not exercise personal jurisdiction over a nonresident corporate officer merely because it has jurisdiction over the corporation, the court may exercise personal jurisdiction “when the officer himself transacts business within the foreign state, whether or not the business is personal or solely on behalf of the corporation.” Yankee Group, Inc. v. Yamashita, 678 F.Sup. 20, 22 (D.Mass. 1988).

 11 U.S.C. 8362(a) provides in part:
Except as provided in subsection (b) of this section, a petition filed under Section 301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; . . .